DECISION
Relator, Katherine Major, has requested this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it denies her motion to increase her average weekly wage ("AWW") to $525, the amount of her full weekly wage ("FWW") and to enter an amended order setting the AWW at $525.
Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court deny the requested writ of mandamus. (Magistrate's Decision, appendix A.)
Relator has filed objections to the magistrate's decision; however, those objections essentially reargue the points already raised in relator's brief and addressed by the magistrate. As such, those issues will not be readdressed here and relator's objections are overruled. We will comment on one aspect of the objections and that is relator's claim that the magistrate misapplied this court's decision in State ex rel. Tims v. Indus. Comm. (1995), Franklin App. No. 94AP-538.
Relator suffered an industrial injury on August 24, 1991, at the time being employed as a full-time caregiver for one Eleanor Resler. She was earning, at that time, $525 per week. After her claim was processed and allowed, her AWW was set at $178.19 and her FWW was set by the Ohio Bureau of Workers' Compensation ("bureau") at $525 per week. From the standpoint of mathematical computation of the AWW, the lower figure was adopted by the bureau because in the weeks prior to the injury, relator had a lower wage while working as a nurse's aide at a health care facility.
In November 1999, relator filed a motion requesting that her AWW be set at a rate equal to her FWW based on the "special circumstances" provision contained in R.C. 4123.61.
Upon hearing, a district hearing officer ("DHO") denied relator's request to set the AWW at a higher figure. The DHO's decision, in pertinent part, stated:
 The District Hearing Officer denies the claimant's request to set the average weekly wage at the same rate as the full weekly wage due to "special circumstances".
 The District Hearing Officer finds that the BWC claims examiner per the average weekly wage at $178.19, per worksheet on file dated 11/07/1991. That worksheet calculates actual wages during the periods employed by each employer. ($10,334.75 divided by 58 = $178.19.)
 The District Hearing Officer sets the average weekly wage at $196.29 ($11,384.75 divided by 58).
 The District Hearing Officer finds that the claims examiner omitted meals and lodging at $175.00 per week for the six weeks that the claimant worked for Eleanor Rester [sic]. The District Hearing Officer finds that the calculations of the claims examiner are otherwise accurate.
 The District Hearing Officer finds no "special circumstances" to justify the setting of a higher average weekly wage. The claimant was fortunate to have been hired full time for one of the patients that she had taken care of while employed by Heritage Community, which wages included meals and lodging.
Upon appeal, the staff hearing officer ("SHO") affirmed the DHO's order. The SHO's decision stated, in part:
 Claimant's counsel submitted copies of both cases that were referred to in the District Hearing Officer order (State ex rel. Clark vs. Industrial Commission, State ex rel. Tims vs. Industrial Commission.) After reviewing these cases the Staff Hearing Officer could find no persuasive reason to disturb the District Hearing Officer's findings.
 The claimant argued that substantial justice and special circumstances, concepts relied on by the courts in the cases cited to above, dictates that claimant's Average Weekly Wage must be set at the same level as her Full Weekly Wage. Specifically, claimant argues that when she left the Agency she had been working for to take care of Ms. Resler (whom she met while working for the Agency), she had a clear departure from the previous income earning ability and was about to embark on a long, stable well-paying association with Ms. Resler as her personal care giver. The facts, however, do not permit this Staff Hearing Officer to agree with this position.
As properly determined by the magistrate, the issue in this case is whether the commission abused its discretion in determining there were no "special circumstances" supporting relator's request to set the AWW at the higher FWW amount.
While R.C. 4123.61 generally speaks to "special circumstances," when the calculation is made with respect to a claimant's AWW, the calculation involving "special circumstances" is only applicable to unusual or exceptional cases. As noted by the magistrate, upon the calculation of an AWW, two general considerations dominate: (1) that the AWW must do substantial justice; and (2) the calculation should not result in a windfall.
As argued in her brief, relator urges consideration of "special circumstances" and the application of a concept of substantial justice as far as warranting the increase in the AWW. However, as concluded by the magistrate, relator did not show an abuse of discretion by the bureau in failing to adopt or utilize "special circumstances" to warrant an increase in the AWW. Relator claimed the magistrate improperly applied the Tims case in reaching the conclusion that the commission did not abuse its discretion in this matter. However, we do not find the magistrate misapplied the Tims case, since it is clear from the record that the commission considered all the necessary factors with respect to whether "special circumstances" would warrant an increase in the AWW. While it is clear that the commission must exercise its discretion to determine whether an increase in AWW would be warranted when considering the evidence relating to relator's age and work experience, the commission is not required to accept self-serving statements.
In view of the factually intensive aspect of determination of AWW, the magistrate observed that the SHO properly viewed relator's employment for a single patient for a brief period of time as not being a reliable indicator of the income relator would have received had she not been injured. The SHO was aware of relator's age at the time of injury and that she worked for nearly twenty years at an occupation at which she never earned more than minimum wage. The SHO also noted that relator had only worked for the private patient for a month prior to the injury. Thus, we agree with the magistrate that this courts decision in the Tims case does not compel a commission finding of "special circumstances" in the instant case warranting an increase in the AWW.
Following independent review pursuant to Civ.R. 53(C), we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. Therefore, having overruled the objections of relator, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the decision of the magistrate, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
BOWMAN and BROWN, JJ., concur.
 IN MANDAMUS
In this original action, relator, Katherine Major, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it denies her motion to increase her average weekly wage ("AWW") to $525, the amount of her full weekly wage ("FWW"), and to enter an amended order setting AWW at $525.
Findings of Fact:
1. On August 24, 1991, relator sustained an industrial injury while employed as a private full-time caregiver for respondent Eleanor Resler. The industrial claim is assigned No. 91-26229.
2. On November 7, 1991, a claims examiner of the Ohio Bureau of Workers' Compensation ("bureau") completed form C-166 captioned "Average Weekly Wage ("AWW") Computation Worksheet."
3. On the C-166, the claims examiner determined AWW to be $178.19 and FWW to be $525.
4. The record also contains the bureau's "Employer Information Sheet" which indicates that relator's gross weekly wages while employed with Ms. Resler was $350. It also indicates that relator received lodging and meals valued at $175 weekly. Thus, total gross weekly income from wages, lodging and meals was $525.
5. The record also contains a letter, dated October 4, 1991, from Heritage Community Health Service ("Heritage") where relator worked as a nurse's aide prior to her employment with Ms. Resler. The Heritage letter indicates that relator's gross income from employment at Heritage during 1990 and 1991 totaled $8,234.75.
6. On the C-166, the claims examiner indicated that relator worked six weeks for Ms. Resler prior to her injury, earning $2,100. Apparently, the claims examiner arrived at this figure by multiplying the six weeks worked by the $350 gross weekly wage. (6 X $350 = $2,100.) Thus, the value of lodging and meals were not included in this calculation.
7. On the C-166, the claims examiner determined that total wages were $10,334.75 by adding $8,234.75 and $2,100. Total wages were divided by fifty-eight weeks to arrive at AWW ($8,234.75 | by 58 = $178.19). Apparently, the fifty-eight weeks included the six weeks of employment with Ms. Resler and an assumption that the Heritage wages were earned over a fifty-two week period.
8. On November 18, 1999, relator moved that her AWW of $178.19 be reset to $525, the amount of her FWW, based upon the special circumstances standard of R.C. 4123.61.
9. Following a September 26, 2000 hearing, a district hearing officer ("DHO") issued an order that denied the request to reset AWW at the FWW amount but granted an increase in AWW based upon inclusion of the value of meals and lodging while employed with Ms. Resler. The DHO's order states:
 The District Hearing Officer denies the claimant's request to set the average weekly wage at the same rate as the full weekly wage due to "special circumstances."
 The District Hearing Officer finds that the BWC claims examiner per the average weekly wage at $178.19, per worksheet on file dated 11/07/1991. That worksheet calculates actual wages during the periods employed by each employer. ($10,334.75 | by 58 = $178.19.)
 The District Hearing Officer sets the average weekly wage at $196.29 ($11,384.75 divided by 58).
 The District Hearing Officer finds that the claims examiner omitted meals and lodging at $175.00 per week for the six weeks that the claimant worked for Eleanor Resler. The District Hearing Officer finds that the calculations of the claims examiner are otherwise accurate.
 The District Hearing Officer finds no "special circumstances" to justify the setting of a higher average weekly wage. The claimant was fortunate to have been hired full time for one of the patients that she had taken care of while employed by Heritage Community, which wages included meals and lodging.
 The District Hearing Officer reviewed the case of State ex rel. Clark v. Industrial Commission, 69 Ohio State 3d 563, as requested by claimant's counsel. The facts in that case that invoked the use of "special circumstances" in order to raise the average weekly wage were that the claimant was working only a few hours per week in order to ease back into full-time employment. The District Hearing Officer does not find the facts in this case to be analogous because in this case there are actual full-time wages for the entire year preceding the injury.
 The District Hearing Officer could not locate the Court of Appeals case that the claimant argued at hearing, and claimant's counsel did not provide a copy to the District Hearing Officer. However, the District Hearing Officer finds the facts of that case, as reiterated by claimant's counsel, also to be not applicable. In this case, the claimant had been promoted to a managerial position for the last seven weeks prior to injury. The promotion to a managerial position was found to be sufficient to invoke "special circumstances" in order to raise the average weekly wage. The District Hearing Officer does not find the claimant's overlapping/change of jobs to a live in aid[e] to be a "promotion" over and above that which the District Hearing Officer has previously accounted for in this order when she added the meals and lodging to the previously set average weekly wage.
10. Relator administratively appealed the DHO's order. Following a November 2, 2000 hearing, a staff hearing officer ("SHO") issued an order that affirmed the DHO. The SHO's order states:
 Claimant's counsel submitted copies of both cases that were referred to in the District Hearing Officer order (State ex rel. Clark vs. Industrial Commission, State ex rel. Tims vs. Industrial Commission.) After reviewing these cases the Staff Hearing Officer could find no persuasive reason to disturb the District Hearing Officer's findings.
 The claimant argued that substantial justice and special circumstances, concepts relied on by the courts in the cases cited to above, dictates that claimant's Average Weekly Wage must be set at the same level as her Full Weekly Wage. Specifically, claimant argues that when she left the Agency she had been working for to take care of Ms. Resler (whom she met while working for the Agency), she had a clear departure from the previous income earning ability and was about to embark on a long, stable well-paying association with Ms. Resler as her personal care giver. The facts, however, do not permit this Staff Hearing Officer to agree with this position.
 Specifically, claimant was 48 at the time of injury and by that time had already worked for roughly 20 years in that profession (nurse/Caregiver Health Aide). She testified that she never earned a wage that was much more than the minimum wage even after twenty years. Claimant asserts that her job with Ms. Resler was a kind of "big break" for her and that but for her 08/24/1991 injury, her income earning ability would have catapulted to $525.00 and remained at or above that level. However, the Staff Hearing Officer finds this assertion to be unrealistic, premised on heavy speculation/assumptions regarding a multitude of factors (both anticipated and unforeseen) that would affect her employment with Ms. Resler (or with any other employer for that matter). Had claimant worked for Ms. Resler for a more substantial time period, it would have been easier for the Staff Hearing Officer to discount or ignore the factors of claimant's age, work history and wage history at the time of her injury. In the case sub judice, evidence substantiates that claimant had worked for Resler for only a month precedent to her injury. To grant claimant her request would be akin to a windfall.
 Nothing in the cases cited to by claimant was found to be inconsistent with the District Hearing Officer's rationale on that offered above. They require a consideration of claimant's own circumstances but not a specific outcome. In the Tims case, the court cited to one of its prior decisions (Blair) in stating, " .vests the discretion in the Industrial Commission to determine the effect, if any, the age and experience of the injured person has upon determining the appropriate Average Weekly Wage . Thus, when present, the factors necessarily must be considered, although such a consideration does not necessarily require a change in the Average Weekly Wage that would otherwise be calculated by applying the provisions of R.C. 4123.61." [Emphasis sic.]
11. Relator sought a further appeal to the commission itself. In support of her appeal, relator submitted her affidavit executed November 22, 2000. Relator's affidavit states in part:
 2. At the time of my injury, I was working for Eleanor Resler as a full-time caregiver and earning $525.00 per week;
 3. I believe that I worked for Ms. Resler making $525.00 per week for approximately five (5) months prior to my injury;
 4. At the time of my injury, I was accustomed to earning $525.00 per week;
 5. Prior to working for Ms. Resler, directly, I worked for Heritage Community Health Service as a Nurse's Aide and earned approximately $3.60 per hour.
 6. While working for Heritage Community Health Service, I provided care for Ms. Resler or any other individual depending upon the assignment given to me by Heritage Community Health Service;
 7. During one of my assignments at Ms. Resler's house, she approached me about working directly for her full-time;
 8. Ms. Resler indicated that beyond providing nursing care, I would be responsible for setting up doctor's, dentist's, hair care and other appointments and driving her to those appointments;
 9. Ms. Resler provided a room for me at her house and I would usually stay with her three or four nights a week;
 10. With the increased responsibilities of my new job, I received increased pay ($525 per week);
 11. I expected that my pay would increase the longer I worked for Ms. Resler.
 12. I worked as a Nurse's Aide for approximately 20 years and believe that my experience helped me obtain my new higher paying job with Ms. Resler;
 13. If I would not have been injured, I would still be working for Ms. Resler, or another individual directly, but would not return to an agency.
12. On December 6, 2000, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 2, 2000.
13. On July 20, 2001, relator, Katherine Major, filed this mandamus action.
Conclusions of Law:
The issue is whether the commission abused its discretion in determining that there are no special circumstances supporting relator's motion to reset AWW at the FWW amount.
R.C. 4123.61 states in part:
 * * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the average weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
R.C. 4123.61 provides a standard AWW calculation that is to be used in all but the most exceptional cases. State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112, 114. Under the standard AWW calculation, R.C. 4123.61 commands that any period of unemployment beyond the employee's control shall be eliminated. State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 288.
The statute also provides for an alternative calculation if "special circumstances" exist. "Special circumstances" is undefined but has generally been confined to uncommon situations. Wireman, supra, at page 288. Moreover, "special circumstances" can be invoked only if the standard calculation yields a result that is substantially unjust. Cawthorn, supra.
AWW is designed to find a fair basis for award of future compensation. State ex rel. Riley v. Indus. Comm. (1983), 9 Ohio App.3d 71, 73; State ex rel. Valley Pontiac Co. v. Indus. Comm. (1991), 71 Ohio App.3d 388,392. AWW should approximate the average amount that claimant would have received had he continued working after the injury as he had before the injury. State ex rel. Erkard v. Indus. Comm. (1988), 55 Ohio App.3d 186,188; Valley Pontiac, supra, at 393.
In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. Wireman, supra, at 287.
At the November 2, 2000 hearing, as reported in the SHO's order, relator's counsel argued that relator's acceptance of the job with Ms. Resler marked a "clear departure from the previous income earning ability," and that the job indicated that relator was about to embark on a long stable, well-paying association with Ms. Resler as her personnel caregiver.
Apparently, the SHO felt that the "special circumstances" determination turned upon the factual question of whether the job as Ms. Resler's caregiver could be viewed as a stable position that is reliably predictive of the income that relator would have continued to receive had she not been injured.
The SHO determined that the job caring for Ms. Resler is not a reliable indicator of the income relator would have received had she not been injured. The SHO explained that relator was forty-eight years of age at the time of her injury and, by that time, she had worked roughly twenty years in a profession in which she never earned much more than a minimum wage. The SHO further explained that relator had worked for Ms. Resler for only a month prior to the injury. The SHO indicated that a more substantial period of time might be held to be predictive of future income. Thus, the SHO concluded that to set AWW at the FWW level would create for relator a windfall.
The SHO appropriately weighed the critical factors and rendered a factual determination that was well within the commission's discretion. That another hearing officer might have conceivably reached another result based upon the same facts does not create an abuse of discretion.
Moreover, this court's decision in State ex rel. Tims v. Indus. Comm. (June 20, 1995), Franklin App. No. 94AP-538, unreported, does not compel a commission finding of special circumstances in the instant case.
In Tims, this court applied another case from this court, State ex rel. Blair v. Indus. Comm. (Apr. 20, 1993), Franklin App. No. 92AP-1015, unreported. In Blair, this court stated:
 * * * [W]e conclude that the "age and experience" provisions of R.C. 4123.62 may constitute "special circumstances" within the contemplation of R.C. 4123.61. Likewise, we find that the language of R.C. 4123.62(A) is not purely discretionary but, instead, places a duty upon the commission in determining average weekly wage.
 Although R.C. 4123.61 vests discretion in the Industrial Commission in determining special circumstances, such circumstances exist whenever "the average weekly wage cannot justly be determined by applying" the other provisions of R.C. 4123.61, in which event the commission is required to "use such method as will enable it to do substantial justice to the claimants."
 R.C. 4123.62(A) provides that, if at the time of injury an employee "was of such age and experience * * * as that under natural conditions his wages would be expected to increase, that fact may be considered in arriving at his average weekly wage." This does not vest a discretion in the commission to consider or not consider age and experience under such circumstances but, instead, vests the discretion in the commission to determine the effect, if any, the age and experience of the injured person has upon determining the appropriate average weekly wage. See Indus. Comm. v. Royer (1930), 122 Ohio St. 271 . Thus, when present, the factors necessarily must be considered, although such consideration does not necessarily require a change in the average weekly wage that would otherwise be calculated by applying the provisions of R.C. 4123.61.
In Tims, this court stated:
 Relator's affidavits stated that she had spoken with her employer about a promotion to manager and that she had been asked to take over the running of the store with the possible increase of wages based on that position. Relator was twenty-four years of age on the date of her injury and had only worked seven weeks with Scotty's when she was injured. There was evidence before the commission that, on the date of her injury, relator was of such age and experience that her wages would be expected to increase. Although the commission is not required to accept relator's affidavit without questioning it, R.C. 4123.62(A) does require the commission to exercise its discretion to determine whether an increase in AWW is warranted given the evidence regarding relator's age and experience. Blair, supra.
In this action, there is no evidence that, on the date of her injury, relator was of such age and experience that her wages would be expected to increase. In fact, it is relator's position in this action that her gross weekly wages at the time of her injury could be expected to remain the same. As relator asserts herein, her increase in earnings occurred prior to her injury and, in relator's words, "were already a concrete reality." (Relator's brief at 7.) Moreover, relator additionally asserts that she " is not asking for a figure [AWW] in excess of her actual earnings * * *." (Relator's brief at 8.) Under such circumstances, R.C. 4123.62(A) is inapplicable to the instant case. The commission did not abuse its discretion with respect to R.C. 4123.62(A), the Blair or Tims cases.Accordingly, it is this magistrate's decision that this court deny relator's request for a writ of mandamus.